Chancellor Rutledge
delivered the decree of the court.
- „ . In this case the following questions arise.
First — Whether the members of the Insurance Company are or are not bound in solido to make good the loss sustained by complainant on the'policies in bill mentioned ?
Secondly — Admitting they were so bound, whether the arrangements made by the surviving members in the year 1793, did not make it a new contract, and complainant acquiescing therein, was bound thereby ?
Thirdly — Whether the members who paid to Mr. Light-wood the sums then settled for their shares or proportions of the debt, are not wholly discharged; and Lightwood having since become insolvent, whether the loss should fall on complainant; he being alleged to be the particular agent of complainant ?
Fourthly — Whether, as several of the members have become insolvent since 1793, the loss occasioned by such insolvency should not be borne by complainant; he not having used due diligence to obtain payment from them ?
On the first point it was admitted, that if complainant’s testator had been a stranger to the articles of the company, that no agreements or covenants they made with each other would have been obligatory on him ; but they would all have been bound in solido to make good his loss. It was at the same time contended for defendants, that complainant’s testator being one of the company, and it appearing by the articles that they each covenanted for himself, seve-rallyand notjointly, to make good any loss of the company in average and proportion, to which he subscribed; they are therefore not collectively liable to any individual of the company whose property was insured, because he being a party to the agreement, and knowing the terms of it in case of any insolvencies, he must sustain the loss of those shares *159 which ought to have been paid by the insolvent members.
This would be a hard doctrine, even if it could be supported by the words of the articles ; but upon a reference to, and on a fair construction of them, we are of opinion that the inference drawn by defendant’s counsel, is by no means warranted.
The articles set out with stating, that the subscribers agreed to join themselves together, and to become jointly .concerned as a company of insurers, for the purpose of insuring ships and vessels, and goods of any individual or individuals, subject to the regulations thereinafter mentioned : then follow the various covenants. Among others, that each party doth severally, and not jointly, and not one for the other, covenant, that the company shall be called the South-Carolina Insurance Company ; that there shall be a president, vice-president, directors, treasurer and' clerk ; that any one of the directors signing a policy in behalf of the company, the same shall be binding on all the members, in average and proportion to the sums by them subscribed ; that the treasurer shall give security for the faithful discharge of the duties of his office. In case any loss should happen, over and above the sums subscribed and deposited for a capital, such loss shallbe borne by each and every of the subscribers, in average and proportion to the sum by him subscribed.
This is the substance of the covenants contained in the articles, which do not differ in any respect from the usual covenants contained in almost all articles of co-partnership.
It is then to be considered whether they ought to have a different construction put on them, .as they regard the complainant, from what they would have, with respect to any other individual.
Had there been a clause inserted in the articles, that in case of any insolvency of any member, the survivors should not make good the loss, then the arguments of defendant’s counsel would apply most'forcibly, and complainant could not have any redress ; although a stranger would not have been prejudiced by such a clause. It is *160 not reasonable to suppose that at the time of signing these the idea of insolvency was at all contemplated j an ^vidual share did not exceed the value of 150/» sterling: and there was not a person who signed them who did not possess a property of some thousands of pounds more than he subscribed for. And the company being restricted as to the extent of the sum that they could risque at any one time, there was not a probability and scarcely a possibility of the insolvency of any of the members. It is owing therefore to events that have occurred after a lapse of many years, that this defence is now set up, which would otherwise never have been thought of. The articles state that they jointly associated for the purpose of insuring the ships, &c. of any individual whatever, without distinction* Complainant’s testator then having paid the same premia um for insuring his vessel that any other person would, have done, he stands in point of justice and equity exactly on the same footing with any other individual, and is equally entitled to be paid the amount of his insurance by the company in solido. By one of the covenants, the complainants are pledged to stand to any insurance made by their directors. Mr. Lightwood having signed this policy as one of their directors, the complainant had a right to recover, and did obtain a verdict against him for the amount subscribed, and had he been solvent, would have received the whole thereof from him. And would it be contended that he, acting for the company, could not by filing a bill against the surviving members, have compelled them to indemnify him ? Surely not. Nay, so sensible were the surviving members of their liability in solido to pay the debt, that when a suit was commenced against Lightwood to recover it, they had a meeting in 1793, and settled the proportion that each of them was to pay. Nor1 can we consider the arrangements then made as a new contract, or a deviation from the original articles, judging as we do that they were primarily bound.
It is unfortunate indeed that they did not pursue the directions of their articles, when they chose their treasurer *161 in 1793, by obliging bim to give security; in which case, those who paid their shares would not be injured.
■ Jt is insisted that Lightwood was the authorized agent of the complainant to receive the money, therefore the complainant ought to bear the loss of the sums so received.
The contrary appears to be the truth of the case : for we find that Mr. Lightwood, together with Mr. Dawson, were appointed treasurers by such of the members as met in October, 1793, and although they might not have constituted a majority of the company, yet the others seem to have acquiesced in what they did p some by paying the sums which were settled as their proportion, and the rest being willing (as they acknowledge) to pay, had they been called upon. And further, from the testimony of Mr. Ward, it appears that complainant would not authorize him to pay any money to Mr. Lightwood as his agent: so that in no point of view could he be c msidered as the particular agent of complainant: therefore the loss of the money received by L. ought not to be borne by him ; because it was peculiarly incumbent on those who did pay to see that, the money was applied properly.
The laches therefore was theirs; for as much as they might have compelled Mr. Lightwood to pay it over if they had thought fit.
The fourth question respects the insolvencies, since the year 1793. There does not appear to be any particular laches imputable to complainant to make him liable for the whole loss. The members who met at that time, appointed their treasurer to settle all losses, and to recover all monies due to the company. The complainant therefore had no business to look for payment from any other quarter than the treasurer. And it was in proof that he had demanded payment from the treasurer Mr. Light-wood, from whom he received a letter, promising to call and settle with him in a few days.
Upon the whole of this case therefore, we are of opinion that the complainant is justly entitled to receive from the surviving members of the Insurance Company, the *162 Sums insured or. his vessel and cargo, with interest", no* thing appearing on a fair and sound construction of the ar^c^es t0 cb®er bis case from that of any other person : deducting therefrom his proportion (as a member of the comPany) of all the losses which have happened by the insolvency of members, except the monies received by Mr. Lightwood. There is no reason whatever, why complainant should share in that loss, he not having had any thing' to do with Lightwood’s appointment. The rule of equity being clear, that if one of two innocent persons must suffer, he who trusts most should suffer most. The loss occasioned by -L’s insolvency, would unavoidably fall on those defendants alone who paid the money; but in the adjustment of it, it must be proportioned to the sums,paid by them respectively; for money having no ear mark, it is impossible to ascertain whose it was precisely that he paid to complainant. Ordered, that it be referred to the mas.-ter to ascertain the sum due to complainant, after deducting his proportion of loss, and the money already received by him. And in the settlement of the' account, he is to adjust it on the same principles that were fixed by the jury in their verdict against Lightwood.
Turnbull for complainants.
Besaussure and Ford for defendants.-
The costs to be paid by defendants.